1

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE WESTERN DISTRICT OF MICHIGAN

3       SOUTHERN DIVISION

4

5   MAGNA ELECTRONICS, INC.,

6       Plaintiff,

7   v.                          CASE NO:  1:12-CV-654

8   TRW AUTOMOTIVE HOLDINGS
    CORP., et al,
9
        Defendant.
10
    _____/
11

12                  * * * *

13          EXCERPT OF PROCEEDINGS

14            COURT'S RULINGS

15                  * * * *

16

17   BEFORE:   THE HONORABLE PAUL L. MALONEY
               United States District Judge
18             Kalamazoo, Michigan
               January 26, 2016
19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

2

1      APPEARANCES:

2
       APPEARING ON BEHALF OF THE PLAINTIFF:
3
            TERENCE J. LINN
4           Gardner Linn Burkhart & Flory, LLP
            2851 Charlevoix Drive, S.E., Suite 207
5           Grand Rapids, Michigan  49588-8695

6
7      APPEARING ON BEHALF OF THE DEFENDANTS:

8           ALLAN J. STERNSTEIN
            TIMOTHY K. SENDEK
9           SARA M. SKULMAN
            Lathrop & Gage, LLP
10          155 North Wacker Drive, Suite 3050
            Chicago, Illinois  60606

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1        Kalamazoo, Michigan

2        January 26, 2016

3            * * * *

4        EXCERPT OF PROCEEDINGS

5            COURT'S RULINGS

6            * * * *

7    THE COURT:  All right.  Thank you.

8    MR. LINN:  Yes.

9    THE COURT:  All right.   Well, here's what I'm going

10   to do on 697 and 700.  TRW has waived the advice of counsel

11   defense and is not offering the Maharshak letter for

12   willfulness, so those issues are off the table as it relates to

13   this March 11, 2015, letter, and obviously off the table as it

14   relates to any defense that TRW might wish to offer, as far as

15   advice of counsel is concerned.

16       As far as the March 11 letter is concerned, I'm not

17   going to rule that admissible based on what I have in front of

18   me right now.  And if TRW wants to brief this more, that's

19   fine.  But I've got a couple of concerns; number one, the

20   letter contains a legal conclusion for which the author of the

21   letter is not competent to give.   Second, to the extent that

22   it goes to indirect infringement, which apparently is the sole

23   reason why it's being offered at this point, I have difficulty

24   understanding when the operative date is for TRW's good faith.

25   Now, it could be that the in-court testimony is going to help

4

1   me on this one, because I gather from Ms. Skulman's argument

2   that there will be other witnesses to testify live about

3   communications from Mobileye to TRW as it relates to the issue

4   of indirect infringement.  If that's the case, that buttresses

5   the record that I don't have in front of me-- that I don't have

6   in front of me right now, and may place in context the March

7   11, 2015, letter.  But as of now, other than the date of March

8   11, 2015, I do not have enough confidence in when this letter--

9   what TRW's position is as to when this letter becomes operative

10   as to their good faith.  So that's the second issue.  Now, as I

11   say, it could be that the trial testimony is going to buttress

12   that and place the March 11 letter in context that helps me in

13   terms of the admissability of the letter.

14          In addition to that, there is some authentication

15   issues here, which if I understand Magna's position, they want

16   to raise, so we've got authentication issues in terms of its

17   admissability as well.

18          So I'm going to reserve on the March 11, 2015 letter.

19    If TRW wants to further brief this with a response from Magna

20   to give me a comfort level on those issues, I'll be happy to

21   read it.

22          As far as the Stein letters are concerned, and this

23   relates to ECF 697, I'm going to allow the Stein letters in.  I

24   think TRW's argument is well taken that to the extent that

25   Magna's witnesses rely at least in part on the-- meaning Dr.

5

1  Heeger-- relies on the Stein communications, I think it's fair

2  game to allow those letters in for purposes of the formulation

3  of opinions by the TRW witnesses.  So ECF 697, to exclude the

4  Gideon Stein letters, is denied.  For now, the motion to

5  exclude the Mr. M (sic. Mr. Maharshak) letter is granted,

6  subject to-- I'm not going to allow it in subject to the legal

7  issues that I have raised, and I could change my mind if TRW

8  wants to re-raise the issue with me.

9       I think the ECF 700 is moot because TRW has taken the

10  reliance of advice of counsel off the table, so I don't think

11  you need a ruling from me on that.  So we are two motions

12  closer to resolving all of the motions in limine.

13       All right.  That gets us to 694.

14       MR. LINN:  Thank you, your Honor.  694 is Magna's

15  motion in limine to exclude reliance on prior art, other than

16  the references that were designated A to U on defendants' sixth

17  amended disclosure of prior art.

18       (Proceedings continued with oral argument - reported,

19  not requested transcribed.)

20       MR. SENDEK: ... So there's no way that Magna can

21  argue that we can't talk about our development that led to

22  eventually where we stand today, but they can and try and gloss

23  over all of the missteps and failures along the way.

24       THE COURT:  All right.  Thank you.

25       Well, I'm ready to rule on 694.  This is Magna's

6

1  motion to exclude references to or reliance on prior art other

2  than references A to U-- that's the letter U-- on Defendants'

3  Sixth Amended Disclosure.

4        Magna expresses concerns in this motion regarding

5  TRW's inclusion of prior references specifically barred by the

6  Court and other attempts to circumvent prior art limitation.

7  That's ECF 694-1 at Page ID 28731.  TRW responds in part as

8  follows:

9        TRW does not intend to rely upon any prior art

10  references that do not appear in the Sixth Amended Disclosure

11  of Prior Art, which is Docket 546, or that the Court has

12  explicitly stricken.  TRW inadvertently included certain

13  already stricken references on its initial proposed exhibit

14  list, which has not been entered in the record here.  The

15  remainder of TRW's position on this motion is at Page ID 32288,

16  this boils down to three witnesses that are issue here; first,

17  Dr. Jochem.  In the Court's judgment, TRW has the better of the

18  argument here.  The doctor will be allowed to provide

19  non-opinion, factual testimony about the Navlab Project.  With

20  regard to this project, Dr. Jochem is, as TRW notes, confined

21  to be a fact witness.  TRW has promised not to ask Dr. Jochem

22  any questions going to the validity of Magna's patents or for

23  that matter, any questions about Magna's patents at all.

24  That's Page ID 32289.

25        The Court believes that an appropriate jury

7

1   instruction could satisfy the needs of both parties, one that

2   clearly confines the jury to consider only those allowed prior

3   art references for prior art and obviousness which go to

4   invalidity. The Court has been cited to numerous Northern

5   District of California cases. The Court finds that the Fuji

6   Film Corporation case at 215-- 2015 West Law 757575 captures

7   the best compromise, and the Court will follow that approach

8   here, and allow TRW to rely on the additional references

9   relating to the Navlab's project as background material, but

10  not as anticipation or obvious references.

11      TRW tacitly admits that it seeks to rebut Magna's

12  contentions relating to obviousness by stating: The Navlab

13  Project is also relevant to Magna's own reliance upon certain

14  so-called secondary considerations of non-obviousness.

15  Specifically, Magna intends to submit evidence that secondary

16  considerations like long felt but unresolved need, failure of

17  others, and copying, among others, establish that its patents

18  are non-obvious. Factual testimony concerning the Navlab

19  Project again directly rebut these arguments. TRW seeks to

20  excuse this by stating that "given the nature of the secondary

21  considerations, the Navlab Project need not serve as prior art

22  reference in order to be relevant to secondary considerations."

23  Citing Ortho-McNeil, at 520 F.3d 1358 at 1365.

24      However, the Court finds that that citation is

25  largely out of context. In the Court's judgment, the middle

8

1   ground here is to allow Dr. Jochem to testify as to his

2   firsthand, factual, personal knowledge with respect to the

3   Navlab Project, but to make clear to the jury that prior art

4   references that they may consider are confined to those in

5   Magna's sixth amendment disclosure.  I would ask the parties to

6   work on an appropriate instruction that formulates that

7   balance.

8         As to Dr. Darrell, the Court has previously issued a

9   ruling related to this matter.  In Magna's motion to strike,

10  the improper reliance on Navlab printed and public use prior

11  art was raised and addressed.  At that time, the Court stated

12  it, "need not address the public use prior art dispute" because

13   "the Navlab references were restricted to those already

14  disclosed at an earlier date."  That is ECF 529.

15        TRW now argues that Magna's public use objection

16  before the Court at that time was TRW's disclosure of Navlab as

17  a public use was not detailed enough, not that the disclosure

18  of Navlab public use was untimely.  TRW submits that the

19  Court's ruling limiting TRW to two articles, a ruling based on

20  the increased number of the

21  articles from the Third Amended Disclosure did not resolve this

22  issue or otherwise definitively strike TRW's disclosure of

23  Navlab as a public use.  Indeed, TRW's disclosure of the Navlab

24  Project as a public use to not suffer from any of the defects

25  that the Court identified in the ruling on the documents, that

9

1    is ECF 767, at Page ID 32292.

2          After review of the record, it's clear that the Court

3    intended to confine Navlab references to those already

4    disclosed at an earlier date.  However, comparison of the two

5    previous disclosures, ECF 351 and 510, reveals that TRW did

6    include a reference to public use in the context of Carnegie

7    Mellon Nevlab at Page 10315 of ECF 351.

8          As Mr. Sendek pointed out, Magna did not object or

9    file a motion to strike, thus at a bare minimum, TRW's proper

10   disclosure of the Thorpe article in conjunction with Navlab

11   Project in its Sixth Amended Disclosure is sufficient to allow

12   TRW to present a public use argument based upon the

13   instrumentality identified and described therein.  That timely

14   disclosure, which the Court has referred to both-- disclosed

15   both Thorpe and its intent to rely upon Navlab Project as a

16   public use.  So there is no surprise to Magna, in the Court's

17   judgment.  However, TRW is stuck with using only the previously

18   disclosed particular references at the outset the Court

19   explicitly allowed, not the Navlab Project as a whole.

20          So in sum, the Court grants in part and denies in

21   part Magna's motion, recognizing of course, that the outset

22   that TRW conceded much of what Magna sought, and will be held

23   to that at trial.

24          Accordingly, the Court directs TRW to only inquire as

25   it promises as to the witness's non-opinion, factual testimony

10

1  about the Navlab Project.

2       So that motion is granted in part and denied in part

3  for the reasons that I've just stated.

4       All right.  Now that includes, I think--

5       MR. STERNSTEIN:  Your Honor.

6       THE COURT:  Go ahead.

7       MR. STERNSTEIN:  We had Raglan Tribe also.

8       THE COURT:  I'm going to allow Dr. Tribe to testify

9  consistent with what I've just said.

10       MR. STERNSTEIN:  Okay.  Thank you.

11       THE COURT:  All right.  Now, some rulings from the

12  bench on motions that are still outstanding, and I recognize

13  there may be still some that are outstanding that the Court's

14  going to have to deal with after this morning.

15       ECF 689.  This is Magna's motion to bar defendants

16  from calling certain witnesses at trial, specifically Drs.

17  Matthew Turk and Ralph Etienne-Cummings.  Magna argues that TRW

18  should not be allowed to call Turk and Etienne-Cummings at

19  trial because such testimony is undisclosed expert testimony,

20  the deposition transcripts are hearsay, and the testimony is

21  irrelevant and unduly prejudicial.  That's ECF 689-1 at Page ID

22  28649.  TRW counters that Magna had notice of the deposition

23  testimony, and that a deposition may be used against a party

24  under Rule 32(a), the hearsay exceptions of 804(b)(1) and 807

25  apply, and the testimony is relevant and not unfairly

11

1   prejudicial.  That's TRW's argument at ECF 758.

2         This is really an intersection of Rule 26, Rule 32,

3   and Rule 37.  The Rule 26 contemplates witness testimony

4   through deposition obviously.  Rule 32 deals with the use of

5   depositions in court proceedings.  Rule 37(c)(1) provides that

6   if a party fails to provide information or identify a witness

7   as required by Rule 26(a) or (e), the party is not allowed to

8   use that information or witness to supply evidence on a motion

9   at a hearing or a trial, unless the failure was substantially

10  justified or is harmless.

11        The first issue for the Court is whether TRW is

12  required to disclose these two individuals as witnesses under

13  26(a) or (e).  On balance, the Court finds that given at least

14  the spirit of Rule 26, TRW should have disclosed its intent to

15  use these experts in this litigation at trial.  However, the

16  expert deposition testimony falls within the hearsay exception

17  of Rule 32, and Rule 37 does not mandate the use of depositions

18  of these experts be forbidden for all purposes.

19        In terms of the hearsay nature of the depositions,

20  TRW points me to Rule 32(a), which is a freestanding exception

21  to the hearsay rule.  That's the Ueland case, U-e-l-a-n-d, vs.

22  United States, 291 F.3d 993 at 996.  That's a Seventh Circuit

23  case.  32(a) is one of the other rules to which FRE 802 refers,

24  evidence authorized by 32(a) cannot be excluded as hearsay

25  unless it would be inadmissible if delivered in court.

12

1        32(a) provides that a deposition may be used against

2   a party if the party was present or represented at the taking

3   of the deposition or had reasonable notice.  Second, it's used

4   to the extent it would be admissible under FRE if the deponent

5   were present and testifying, and the use is allowed under

6   32(a)(2) through (8).  Magna's counsel was present at both of

7   these depositions, and indeed Turk and Etienne-Cummings were

8   Magna witnesses.  Assuming the witnesses are unavailable, the

9   deposition testimony clearly falls within the exception.  The

10   Court finds that these witnesses are unavailable because they

11   reside well more than 100 miles away and fall outside of the

12   scope of the Court's subpoena power, and given the fact that

13   these experts were Magna witnesses in prior proceedings, the

14   Court highly doubts that the witnesses would acquiesce to

15   testify upon the request of Magna.

16        Rule 37(c)(1) provides that if a party fails to

17   provide information or identify witnesses required by Rule 26,

18   the party is not allowed to use that information or witness to

19   supply evidence at trial, unless the failure was substantially

20   justified or is harmless.  In our circuit, it's well settled

21   that Rule 37(c)(1) does not compel the district judge to

22   exclude testimony in its entirety.  That is the Roberts ex rel.

23   Johnson case, at 325 F.3d 776 at Page 784, a 2003, Sixth

24   Circuit case.

25        Rather the Court in lieu of total exclusion may

1  impose other appropriate sanctions.  As I've said before, I

2  think TRW should have disclosed these witnesses.  However, on

3  balance, the Court finds that the limited use of the deposition

4  would be harmless to the extent that the rule is concerned with

5  notice.  TRW correctly notes that Magna obviously knew about

6  these witnesses, and the witnesses themselves were retained by

7  Magna in advance of Magna's arguments in prior proceedings.

8          Magna argues that both Dr. Turk and Dr.

9  Etienne-Cummings testified regarding prior art barred by this

10  Court's prior orders.  If true, the use of the testimony would

11  obviously not be harmless and would be inconsistent with the

12  Court's prior orders.  Thus, the Court will only allow portions

13  of the depositions to be admitted that are relevant to this

14  case and the prior art in this case.  It will be up to TRW to

15  ensure that the use of the depositions are for those limited

16  purposes and conform to the Court's direction.  While the Court

17  declines to exclude in its entirety the use of the depositions,

18  the Court's order here is narrow and is not to be used as any

19  sort of attempt to induce already barred prior art.

20          So accordingly, the motion is granted in part and

21  denied in part.  And I will allow the use of the depositions

22  only for the very limited purposes that the Court has just laid

23  out.

24          Magna has Motion 690, which is a motion to exclude

25  references to defendants' other patents.  Based on this record,

14

1   the bottom line here is the court will have to consider the

2   objections in this regard as they arise during the trial for an

3   individualized assessment for whether the reference is

4   relative-- or is relevant to the case.

5        The Court advises TRW that injection of its own

6   patents must be selective and a good faith basis for

7   relevancy.  Relevant purpose would not include in the Court's

8   judgment references to TRW's patents for background purposes in

9   the infringement phase.  Whether TRW is an active inventor or

10  participant in its own technology or practices its own patents

11  is irrelevant as to whether TRW infringes with the claims at

12  issue in this case.  Even if the Court in one of the cases TRW

13  cites to--  Even the Court in one of the cases TRW cites held

14  that the party in the case could not present general evidence

15  about the history of its own patents.  That is the Cook case.

16  Frankly, the last thing the jury needs in this case is a slew

17  of other patents not directly related to this case.

18        To the extent that TRW plans to thoughtfully

19  introduce its own patents for limited purposes, it would be

20  better for the parties to confer, coordinate and raise any

21  issues or objections with the Court prior to the start of the

22  proposed testimony each day.  So for now, because I can't

23  evaluate this in its entirety, based on the record I have in

24  front of me, the Court denies Magna's motions with the guidance

25  that I have just given.

1        The next motion is ECF 727, which is TRW's motion to

2   exclude the expert testimony of Michael Nranian, N-r-a-n-i-a-n,

3   regarding secondary considerations of nonobviousness.  This is

4   ECF 727.

5        In the Court's view, Magna correctly notes that at

6   least in part that TRW's motion boils down to the argument that

7   Mr. Nranian's opinions do not prove secondary considerations.

8   The Court emphasizes that the outright rejection of expert

9   testimony is the exception rather than the rule, and the trial

10   Court's role as a gatekeeper is not intended to serve as a

11   replacement for the adversary system.  That's In re Northwest

12   Airlines, 197 Fed. Supp. 2d 908 at 913 and 914, an Eastern

13   District of Michigan, 2002 opinion.

14        Vigorous cross examination, presentation of contrary

15   evidence, and careful instructions on the burden of proof are

16   the traditional and appropriate means of attacking shaky but

17   admissible testimony.

18        TRW chiefly takes issue with one of the expert's

19   reports because it allegedly, "Is not the product of reliable

20   principles or methods, nor has the expert reliably applied the

21   principles and methods to the facts of the case."  In this

22   regard, TRW chiefly relies on MeadWest Vaco Corporation, 732

23   F.3d 1258, a federal circuit 2013 opinion.

24        Magna appropriately points out that MeadWest Vaco was

25   a summary disposition case, not a Daubert case, and argues it

16

1   stands for the proposition that analysis of secondary

2   considerations need to have a nexus to the claimed invention,

3   citing Iron Grip Barbell, which is 392 F.3d 1317 at 1324.

4        Obviously Magna is correct in that point, and while

5   TRW takes issue with how the witness defines the scope of the

6   invention, that goes to the weight rather than its

7   admissibility.  Nearly all of the cases that TRW cites on this

8   motion involve summary judgment analysis rather than

9   admissibility at trial.

10       On balance, Magna has the better of the argument with

11  most of the grounds that TRW seeks to challenge, "The Graham

12  case and its progeny require the consideration of various

13  secondary indicators of nonobviousness, including commercial

14  success, long-felt but unsolved needs, and failure of others."

15  That's Brown & Williamson Tobacco at 229 F.3d 1120, at 1129.

16       With respect to TRW's arguments concerning licensing,

17  copying, and long-felt need, in the Court's judgment, all of

18  those argument go to weight and not admissibility of the

19  expert's testimony.

20       However, in the Court's judgment, TRW does

21  successfully argue that the expert lacks the expertise to opine

22  on commercial success.  In terms of commercial success, the

23  Federal Circuit has held that a nexus between commercial

24  success and the claimed  features is required.

25       In the Court's judgment, this expert is not qualified

17

1   to opine on commercial success in the first instance.  Most

2   notably the expert possesses an MBA, he explicitly and

3   unequivocally states that "my opinions in this report are

4   provided from the viewpoint of one of ordinary skill in the art

5   at the time frame of 1995 and 1996 of the Asserted Patents."

6   The defendant correctly notes that numerous courts have held

7   that technical experts do not possess the necessary

8   qualifications on commercial success issues, even when such

9   experts have experience in areas of product design, product

10  development, manufacturing, and sourcing.  That's Wonderland,

11  215 Westlaw 5021416, at Page 13.  Commercial success requires

12  more than a mere citation of public information which, of

13  course, the expert relies on.  For example, to establish

14  commercial success, the patentee must provide proof that the

15  sales were a direct result of the unique characteristics of the

16  claimed invention as opposed to other economic and commercial

17  factors unrelated to the quality of the patented subject

18  matter.

19         In the Court's judgment, this expert is not qualified

20  and does not even attempt to speak to "other economic and

21  commercial factors unrelated to the quality of the patented

22  subject matter."  Accordingly, I'm going to allow the witness

23  to testify on everything except commercial success.  So the

24  motion is granted in part and denied in part.

25         I've already dealt with 697, which is the Stein and

18

1   Mr. M (sic. Maharshak) letters, for lack of a better

2   reference.

3        692 is Magna's motion to exclude evidence of dropped

4   patents and claims.  In this situation, Magna was forced by

5   court order to limit the number of patents and claims

6   asserted.  So on balance, Magna's correct that the evidence of

7   the dropped patents and claims are largely irrelevant for the

8   first phase of the trial.  And to the extent that it's

9   minimally probative with respect to TRW's prosecution latches

10  defense, the Court finds that the injection of the additional

11  patents and claims will-- or the obvious-type double patenting,

12  which is the additional issue, will unnecessarily lead to jury

13  confusion and unfairly prejudice Magna.  Accordingly, 692 is

14  granted.  However, as to the willfulness phase-- is granted as

15  to the infringement phase of the case.  However, the Court's

16  not satisfied that it has received adequate briefing targeted

17  specifically to the question of whether TRW's use of dropped

18  patents and claims in the willfulness stage is appropriate.

19  Thus, the Court orders the parties to file supplemental briefs

20  as to only whether TRW may properly use Magna's dropped patents

21  and claims for purposes of willfulness in the second phase of

22  the trial.  And I would ask the parties to provide those

23  briefs, if at all possible, by Monday, February 8, 2016.

24        691 is Magna's motion to exclude pleadings and

25  evidence of other proceedings.  This is specifically trial

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

19

1   Exhibits PJ and PK, or other testimony related to other

2   proceedings.  The Court notes that this motion, while slightly

3   different in scope, concerns the same arguments that the

4   parties advanced in the motion previously granted on the record

5   at the pretrial conference on January 20, 2016, that is, ECF

6   796, and I'm not going to review what I said there, but in

7   light of the Court's prior rulings, Magna's motion of 691 is

8   granted.

9       All right.  I think that leaves outstanding a number

10  of motions for which I'm probably going to issue written

11  opinions.  But I also note that ECF 693, excluding references

12  to the ICT-- I'm sorry, the ITC and IPR are outstanding, and

13  I'm going to turn to my clerk to ask whether there is anything

14  outstanding that I said I was going to do today.

15      LAW CLERK CLOPTON:  You covered it, your Honor.

16      THE COURT:  All right.  Thank you, Mr. Clopton.

17      All right.  That's all for today.

18      If clarifications are needed, I'll try.

19      Go ahead, Mr. Sternstein.

20      MR STERNSTEIN:  Okay.  Thank you, your Honor.  We

21  just want to advise you of two things that we can address

22  whenever you want.

23      THE COURT:  Okay.

24      MR STERNSTEIN:  Number one, you have before you the

25  motion for judicial notice.

20

1        THE COURT:  Yes.

2        MR STERNSTEIN:  That still is outstanding.

3        THE COURT:  Thank you.

4        MR STERNSTEIN:  Mr. Linn has noted one reference that

5  he will concede to, but still I'm going to let him explain

6  which one he wants, you know, on those.  But that is still

7  outstanding, and depending on your ruling, we will bring in the

8  IEEE witness or not for that.  So we have that issue.  The

9  other issue we had talked about this Rajeeb Nath.  We are

10  informed that Rajeeb Nath is out of the country, so he is

11  clearly unavailable, he is overseas in India-- yes, in India,

12  so.

13        THE COURT:  Is the weather good in India now?

14        MR STERNSTEIN:  I'm sure it's better than here.  But

15  that being the case, it's-- we would want to utilize his

16  deposition transcript.  And there is an objection raised on

17  that.  Those are two issues that will be, however you want to

18  handle that.

19        THE COURT:  Was there a supplemental filing on ECF

20  723?

21        MR STERNSTEIN:  With regard to either of these?   Oh,

22  yes, there was.

23        THE COURT:  Did you want to say anything about that

24  or are you just going to stand on what you filed?

25        MR STERNSTEIN:  We just showed that--  We will stand

21

1  on what is filed.  It's just providing your Honor with two

2  exhibits, and basically showing admissions that there was no

3  such alleged implied license agreement.

4      THE COURT:  All right.  For purposes of the record,

5  this is ECF 804, which is TRW's submission, and Magna's

6  response is ECF 808.  Thank you for that.

7      Mr. Linn, I don't know if you want to say anything

8  about your 808 or not.

9      MR. LINN:  I don't want to belabor that.  We put it

10  in our short material we provided a couple counter documents to

11  counter the information they submitted.

12      THE COURT:  All right.  Thank you.

13      MR. LINN:  Your Honor, there was a sort of a

14  housekeeping issue.  The parties have discussed on the exhibit

15  lists, we have previously-- there was an errata sheet submitted

16  previously because there was a correction needed to be made,

17  and we did it once.  There is another correction that needs to

18  be made, and we have sort of waited until now to make sure we

19  got all of the corrections rather than do it on a daily basis.

20  So there is an errata on Magna's exhibit list that we would ask

21  the Court's indulgence to file.  As I understand it, there is

22  no objection, and it's just making sure they are complete as to

23  the production numbers on a couple of the exhibits.

24      THE COURT:  All right, Mr. Sternstein?

25      And you are going to do a single sheet on that you

22

1   are not going to re-file the whole document?

2        MR. LINN:  Correct.

3        THE COURT:  Like TRW did on theirs.

4        MR. LINN:  Yes.

5        THE COURT:  Any objection, sir?

6        MR STERNSTEIN:  No, your Honor, no objection.

7        THE COURT:  All right.  Great.

8        MR STERNSTEIN:  We will have the same thing as far as

9   a witness list, if we have to bring the person from IEEE.

10       THE COURT:  All right.  Thank you.

11            Anything else for the record?

12       MR. LINN:  No.  If the Court wants to hear any

13  comments about this judicial notice, I'm happy to make some

14  comments now, we can submit a paper, how ever you want us to

15  deal with it.

16       THE COURT:  Why don't you give it to me in writing,

17  that way I can evaluate TRW's submission and your submission,

18  and if TRW wants to weigh in a reply, that's fine too.

19       MR. LINN:  And just so the Court understands, there

20  was a number of different references.

21       THE COURT:  Right.

22       MR. LINN:  We have not objected to a couple earlier

23  on, we then did another evaluation.  We said that we would not

24  object to one of them, and now the remaining group all suffer

25  from the same infirmity.  I think there is four of them, but

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

23

1  it's the same issue as to each one of them, so it's only really

2  one issue.

3       THE COURT:  Okay.  Great.  Thank you.

4       Mr. Sternstein, go ahead, sir.

5       MR STERNSTEIN:  Yes.  I just wanted to double-check

6  if your Honor had any instructions on the Nath issue, how you

7  wanted to resolve that one?  Judicial notice, you have all of

8  the papers.

9       THE COURT:  Right.

10      MR STERNSTEIN:  There really hasn't, you know, we

11  have submitted his deposition transcript, it's been objected

12  to.  I didn't know if you wanted to hear arguments.

13      THE COURT:  You want to get some guidance on that.

14      Mr. Linn, what is your position regarding these

15  witness?  If he is in India, how long does it take to get to

16  New Delhi, I mean I don't know.

17      MR. LINN:  I would love to go try to hunt for him.

18      THE COURT:  You are not suggesting it would be nicer

19  to be in New Delhi than Kalamazoo, are you?

20      MR. LINN:  Depends on the day, your Honor.

21      THE COURT:  Okay.

22      MR. LINN:  Mr. Nath is a third-party who used to be a

23  Magna employee and he's since left.  After the close of

24  discovery, frankly, I think it was in November or something,

25  they took his deposition in the Magna III case is what we call

24

1  it.  Now they are trying to interject it in this case, and that

2  is the basis of our objection.  We don't believe that's

3  correct.

4      THE COURT:  And what is the problem?

5      MR. LINN:  The problem is his testimony is in the

6  context of the things that-- it's in the context of his

7  activities--

8      Better collect my thoughts, your Honor.

9      THE COURT:  That's all right.

10      MR. LINN:  Engage brain before engaging the mouth.

11      THE COURT:  We have been dealing with a lot of issues

12  today, and I appreciate the fact you need to, okay, now I'm

13  ready.  Go ahead.

14      MR. LINN:  That's right, your Honor.

15      Mr. Nath was involved with Magna's activities with

16  various products and what have you.  At the time that he was

17  being deposed, it was in the context of Magna III.  Certainly

18  we would have been-- had a different view, if you will, in

19  terms of interrogating Mr. Nath in cross in response if we

20  thought that we were going to be facing his testimony here in

21  this suit as opposed to some later trial when we may have had

22  other opportunities to drag him in here.

23      THE COURT:  Related to issues that were involved in

24  Magna III, but not in this case?

25      MR. LINN:  Well, his testimony I believe is in

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

25

1   general to his activities at Magna, and potentially they would

2   apply to both, but he was being deposed in Magna III.  He is a

3   third party.  We were--  We did ask questions at the end of

4   cross, but at the time, we were not contemplating that his

5   testimony was going to show up in this case, and we potentially

6   would have asked different or more questions.

7          THE COURT:  Okay.  Thank you.

8          Go ahead, Mr. Sternstein or Mr. Sendek.

9          MR. SENDEK:  Your Honor, Mr. Nath is a-- there is

10   different patents in Magna III and Magna I, and that is the

11   only thing that's different.  Mr. Nath's testimony that's been

12   designated, you know, to the question put to Mr. Linn, why

13   don't they want-- it's really bad for Magna.  He testifies

14   about, you've heard a lot about how whether or not there was a

15   two-supplier market.  Mr. Nath says it wasn't.  There was a

16   bunch of other competitors.  He says--  He talks at length

17   about something I foreshadowed a little earlier, about how

18   Magna's-- what Magna's homegrown solution to a lot of these,

19   you know, technological problems, high beam control and stuff

20   like that were failed, they were abandoned projects.  He

21   testifies about history and the competition.  There are things

22   that are common to both Magna I and Magna III.  And Mr. -- We

23   noticed his deposition when he was still a Magna employee, it

24   just took us so long to get his deposition that in the interim

25   he had moved on.  So you know, the fact that he is a

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

26

1   third-party is something that was-- he became a third-party at

2   a point in time beyond our control.  And we have asked for--

3   We had a number of--  Magna is bringing a number of

4   third-parties-- I shouldn't say at least one third-party to

5   this lawsuit, Mr. Scofield, one of the inventors is a

6   third-party-- I think he is retired-- and Magna seems to be

7   able to get him to come in and give testimony on their behalf.

8   We asked them if you can bring in Mr. Nath, and they said we

9   cannot get him to come to trial, and we are not authorized to

10   accept a subpoena on his behalf.  So I'm surprised to hear

11   well, we can't get him in for Magna I, but we could have gotten

12   him in for Magna III.  So he is allowable-- we are allowed to

13   use his deposition if he is unavailable under both Rules 804

14   and 32.  804 explicitly says whether the testimony was given

15   during the current proceeding or a different one.  Doesn't even

16   say earlier, later, same time, it just says any different

17   proceeding.  And all it has to be is offered against a party

18   who had or predecessor in interest had an opportunity and

19   similar motive to develop it by directing cross examination.

20   They had the opportunity and motive.  They cross examined him

21   on the same issues that are live issues in both Magna III and

22   Magna I, which is competition and prior efforts to develop.  I

23   guess the only thing left is maybe they would have tried a

24   little harder, if they knew it was going to be used in Magna

25   I.  We didn't know the witness was going to be in India either,

27

1  maybe we would have tried a little harder with respect to what

2  the questions we asked him, but that's not a cognizable reason

3  to keep his deposition out under either 804 or 32.

4        THE COURT:  All right.  Thank you.  Well, based on

5  what I've heard this afternoon, I'm going to allow the witness

6  to testify.  I will review, however, the designations based on

7  the representations of how the testimony is relevant, and if I

8  have a different view or want to cut it down, I'll let you

9  know.  But for now, based on what I've heard, I'm going to

10  allow the deposition to be read.

11        Now, of course the trial judge always inquires--  Are

12  the principals still working?

13        MR STERNSTEIN:  They are still working, your Honor.

14        Nothing has been resolved yet.  Last I heard, I was

15  trying to get-- check emails yet this morning.  They were going

16  to try and meet this afternoon, but I don't know that, in fact,

17  that schedule has-- that they have been able to do it, but last

18  heard--  Bottom line, there are still discussions.

19        THE COURT:  Mr. Linn, your perspective?

20        MR. LINN:  He has more info than I, your Honor, which

21  is always embarrassing.

22        THE COURT:  No, that's all right.

23        MR. LINN:  But I do know they are talking.  I knew

24  they were going to try to get together.  There is some

25  international travel problems on both sides with the power

28

1  brokers that would actually close the dial, so they are trying

2  to resolve a lot of issues at different levels.

3       THE COURT:  All right.  Well, thank you.  Obviously I

4  appreciate your work in trying to come to an amicable

5  resolution of the case.  I mean, in large measure, it boils

6  down to a business decision, and if you're still working on it,

7  that's good news for the Court, and I certainly appreciate the

8  fact that you're still working on it.  If we can get it done,

9  fine.  If not, I don't think we are going to have any more

10  court hearings before February 1st, so I'll see you February

11  1st at 8:45 if we are going to go to trial.

12       MR STERNSTEIN:  Thank you very much, your Honor.

13       MR. LINN:  Thank you, your Honor.

14       COURT CLERK:  All rise, please.

15       Court is adjourned.

16       (At 12:26 p.m., proceedings were concluded.)

17

18

19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

1

2

3

4

5                          REPORTER'S CERTIFICATE

6

7

8            I, Kathleen S. Thomas, Official Court Reporter for

9       the United States District Court for the Western District

10      of Michigan, appointed pursuant to the provisions of Title

11      28, United States Code, Section 753, do hereby certify

12      that the foregoing is a true and correct transcript of

13      proceedings had in the within-entitled and numbered cause

14      on the date hereinbefore set forth; and I do further

15      certify that the foregoing transcript has been prepared by

16      me or under my direction.

17

18

19

20                  /s/

21          _____

22              Kathleen S. Thomas, CSR-1300, RPR
                U.S. District Court Reporter
23              410 West Michigan
                Kalamazoo, Michigan  49007
24

25